DECISION
This appeal involves a June 2007 omitted property assessment made by Defendant that retroactively altered Plaintiff's property values for tax years 2002-03 through 2006-07. The assessment increased Plaintiff's property values for tax years 2002-03, 2003-04, and 2004-05; the values were apparently decreased for tax years 2005-06 and 2006-07.
Trial was held by telephone on March 18, 2008. Plaintiff appeared on his own behalf. Defendant was represented by Michael Schneyder, Josephine County Assessor. Testifying for Defendant was Michael Seyboldt, a commercial appraiser with the Josephine County Assessor's Office. For ease of reference the parties will be referred to as taxpayer and the county. Taxpayer submitted exhibits A through E, plus a written narrative critiquing the county's appraisal. The county submitted a 52 page appraisal report, marked Defendant's Exhibit A.
 I. STATEMENT OF FACTS
The subject property, identified in the assessor's records as account R319692, is a 1.97 acre (85,813 square feet), commercially zoned parcel (zoned C-3) improved with an older single-family residence and three garages. The improvements are at the end of their economic life and have a nominal value. The property is located within the urban growth boundary of Grants Pass, with 136 feet of road frontage on a main thoroughfare in the Redwood area, which is in the *Page 2 
southwest part of town. The C-3 zoning allows a wide array of uses from commercial to multi-family residential (i.e., apartments). There is a large mini-storage facility directly west of the subject property; nearby is a new hospital built in 1999, and the Rogue Community College. Taxpayer acquired a one-half interest in the subject property from his mother and, in 2003 or 2004, taxpayer purchased his sister's share of the property for $94,000.
The property, originally outside the city limits, has been served by municipal sewer lines for many years. After a city annexation brought taxpayer's property within the city limits, the city extended a water line to the area that runs in front of taxpayer's property. That extension of water occurred in 2000. While taxpayer's property is currently served by a well, connection to city water is available by virtue of the newer city water line.
The county contends that the availability of city water is an offsite improvement that made taxpayer's property more amenable to commercial development, which increased the value of the property. The county further contends that it failed to add that increased value to taxpayer's property through 2006, and that its failure to include that improvement in the value constitutes "omitted property." Accordingly, the county issued an omitted property assessment correction notice, dated June 26, 2007, adding that value. The assessment notice explains that "[t]his correction is because it was discovered that the offsite development extended city water lines to the parcel prior to the 2002 assessment date (OAR 150-307.010(1))." The operative year for the correction under existing Oregon law is tax year 2002-03, because it is the earliest year for which value was corrected and values for subsequent years are merely "trended."
 See ORS 308.156(3)(a).[1] *Page 3 
The county's omitted property assessment increased the overall real market value (RMV) of taxpayer's property for the 2002-03 tax year by $173,740, from $98,810 to $272,550. (Ptf's Compl at 3.)[2] The corresponding increase in assessed value (AV) was $112,920, with the AV increasing from $75,030 to $187,950. That increase was intended to reflect the increased development potential for commercial property with the availability of city water, compared to the property's value without city water.
The county re-evaluated the matter for trial and submitted an appraisal report marked Exhibit A, which concludes that the overall RMV as of January 1, 2002 (2002-03 tax year) was $239,488. (Def's Ex A at 37.) That figure is $33,062 lower than the RMV reflected in the original assessment correction notice. The county allocates the majority of that value, $223,113, to the land, with $16,375 allocated to the improvements. Id. at 2, 28, 29, 37. The land estimate is based on the availability of city water, with the land valued at $2.60 per square foot. Id. at 28. The county determined that the value of the land without the availability of city water was $154,533, or $1.61 per square foot, as of January 1, 2002. Id. at 37, 48. The difference is $84,955, which the county asserts is the correct amount of omitted property value to be added to the 2002-03 tax year. A portion of that amount is added to taxpayer's MAV and AV under applicable statutes implementing Measure 50, a state constitutional amendment that established a new method of valuing property for state tax purposes.
Taxpayer agrees with the county's RMV estimate of $239,488 as an accurate reflection of the market value of the subject property as of January 1, 2002. Taxpayer disagrees with the county's omitted property determination, contending that there are a number of factors contributing to the "increased value," and that the county's value for his property without city *Page 4 
water is in error because the county's study is flawed. Taxpayer believes that the primary reason for the difference in value is a rising market, a fact the county apparently originally failed to recognize. In other words, taxpayer is not challenging the county's assertion that it originally failed to value the property with the availability of city water, but rather, its conclusion that the presence of city water increased his property's value by nearly $85,000. Taxpayer asserts that city water added little or no value to the property.
 II. ANALYSIS
ORS 311.216 through ORS 311.235 require the assessor to add the value of any property omitted from assessment and taxation. The operative language is found in ORS 311.216, which provides in relevant part:
 "(1) Whenever the assessor discovers * * * that any real or personal property, including * * * improvements * * * on land previously assessed without the same, has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219."
OAR 150-311.216(1)[3] provides that "[o]mitted property includes any part of any real or personal property that has been omitted due to the assessor's lack of knowledge of its existence."
The assessor, in this case, added as omitted property the increased value to taxpayer's land attributable to the addition of city water, giving the notice required by ORS 311.219, and then proceeded to add the value as provided in ORS 311.223. The county maintains that under ORS307.010, the extension of city water constituted an off-site development, which is a taxable improvement to the subject property that increased the development potential, and thus the value, of taxpayer's land. The correction was made in June 2007, and went back to the 2002-03 tax *Page 5 
year. Taxpayer challenges the amount of value added, which, for the 2002-03 tax year, would be $84,955 (an amount reduced by the county at trial and down from the original 2002-03 amount of $112,920).
Taxpayer has the burden of proof and must establish by a "preponderance of the evidence" that the amount of value to be added is excessive. ORS 305.427. Taxpayer submitted an appraisal estimating the value of his property as of October 3, 2000, but that report is largely irrelevant because the parties agree on the value of the subject property as of January 1, 2002, which includes the value attributable to city water. The dispute is over how much, if any, value is attributable to city water. As explained above, the county estimated the value of city water to the property as the difference between the market value of taxpayer's property with, and without, city water. The county determined that the value is $84,955.
Taxpayer did not assert a value, but instead testified generally to his opinion that city water added little or no value. Taxpayer did not establish that he was qualified to appraise property, and the rationale for his opinion was unpersuasive.
Taxpayer's presentation of his case-in-chief was extremely short, lasting just under 12 minutes. The only affirmative evidence taxpayer presented was a reference to Comparable 2 in his appraisal report, a property purportedly similar to the subject, except that it does not have city water available. Taxpayer notes that the appraiser (Eames) made no correction for the lack of water, and concludes that Eames considered public water to add only a "negligible contribution to the value of the property." However, an equally plausible alternative explanation is that Eames simply overlooked the fact that his Comparable 2 lacked city water. Given the number of errors in that report brought out by the county on cross-examination, the court finds it quite likely that the latter explanation (that Eames was unaware that property lacked city water) is the correct *Page 6 
one.[4] If that is not the case, taxpayer should have had the appraiser testify rather than speculating about any conclusions Eames may have drawn.
As stated earlier, the majority of taxpayer's case was built on an attack of the county's value conclusions. Taxpayer asserts that the county's value of the property without city water is "skewed." Taxpayer criticized the county for not analyzing the variance in its data pool. Taxpayer asserts that there are a large number of factors involved in the appraisal of his property, and that the county's assumption that the difference in value between properties with, and without, water is attributable solely to the presence or absence of water is not necessarily correct, because there could be other factors at play.
The county's data may in fact be skewed, as taxpayer asserts, but, as this court has previously stated, "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." Poddar v. Dept. of Rev., 18 OTR 324, 332
(2005) (quoting Woods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted)). Taxpayer in this case has not provided any evidence to support his assertion that the addition of city water added little or no value to his property. Taxpayer's bald assertion that the county is not necessarily correct in its determination of the property's value with water versus without water is equivocal and does nothing to support his case. Thus, taxpayer's finer critiques of the county's data, and his own observations about factors that seem to influence value, carry no weight in determining whether the amount of omitted property value should be reduced. *Page 7 
Moreover, the county explained that it used all the data available on the sales of property similar to the subject property with, and without, city water. The court has reviewed the county's evidence and finds that the county was somewhat conservative in its conclusions about the value of city water, and that removing the sales taxpayer asserts are dissimilar from the subject property (because of their zoning, which taxpayer asserts is "residential," but that actually allows for multi-family residential development such as apartments) only increases the difference in value between property with, and without, city water, which would increase the amount of omitted property value.[5]
One final observation is in order. A colloquy between taxpayer and the county's appraiser Seyboldt reveals that taxpayer misunderstands a fundamental principle of property valuation — highest and best use. Taxpayer erroneously asserted that the county is legally precluded from increasing his value for any increased development potential stemming from the extension to his property of city water, until the property is put to a commercial use. However, the point of a highest and best use analysis is that the market recognizes, and pays for, potential uses of a property provided that they are reasonably probable, legally permissible, physically possible and financially feasible, and result in a higher value. See e.g., Appraisal Institute,
The Appraisal of Real Estate 305 (12th ed 2001) ("Highest and best use may be defined * * * [as] [t]he reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value"). The validity of the highest and best use analysis is born out in an exchange between the parties *Page 8 
during which taxpayer acknowledged on cross-examination that "future uses are things that are considered by people who are purchasing property, and that it's a factor in setting the price."
 III. CONCLUSION
The court concludes that taxpayer has failed to establish by a preponderance of the evidence that the county's omitted property assessment, adjusted downwards at trial to $84,955 for the 2002-03 tax year, is in error. Accordingly, taxpayer's appeal is denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of Defendant's omitted property assessments for tax years 2002-03 through 2006-07 is denied; and
IT IS FURTHER DECIDED that the amount of omitted property value for tax year 2002-03 is $84,955.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.
Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on July 10, 2008.The Court filed and entered this document on July 10, 2008.
[1] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2005 (because the correction was made in 2007, which is before the 2007 statutes took effect).
[2] Page 3 of Taxpayer's Complaint is the county's assessment correction notice.
[3] All references to the Oregon Administrative Rules (OAR) are to the rules in effect in 2007.
[4] Other problems with Eames's appraisal report include: 1) Eames's report fails to recognize a second building on his Comparable sale 2, which suggests that Eames was unaware of the existence of that building; 2) Eames used a residential appraisal report form rather than a commercial form to value taxpayer's commercially-zoned property; 3) Eames erroneously indicates that the subject property is located in an area of primarily owner-occupied single-family residences, and states that his value estimate was derived from sales of "similar residential homesites" when in fact the subject is not a residential homesite and the appraiser used commercial sales as comparables.
[5] Taxpayer objected to the county's use of "residential" properties in their pool of sales of property without water. However, the "residential" property is actually property zoned R3, which is high-density residential (i.e., apartments). According to the county, that property is like commercial property because it can produce income, and sells for more than typical single-family residential. *Page 1